**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
KATHLEEN BUNNELL and
DENNIS BUNNELL,                                          12-CV-6412 (FB) (SMG)

     **Plaintiff,**

               **VERIFIED ANSWER AND**
    - against -         **COUNTERCLAIM**

FARZAD HAGHIGHI,

       **Defendant.**
-------------------------------------------------------------------X

   Defendant, FARZAD HAGHIGHI, answering the Complaint of Plaintiff, by his attorney,

Daniel Alliance, Esq., answers and alleges as follows:

1. Defendant answers Paragraph ÷1ø of the Complaint as follows:

  a) Defendant does not have sufficient information or knowledge to admit or deny whether

   Kathleen Bunnell is an individual, resident, or citizen of the State of Massachusetts, nor

   whether Kathleen Bunnell is the wife of Dennis Bunnell.   To the extent that Kathleen

   Bunnell is not a resident or citizen of the State of Massachusetts, then subject matter

   jurisdiction does not exist and this court lacks jurisdiction over this action.   To

   Defendantøs information and belief, Plaintiff is the current owner of 120 Greenway North,

   Forest Hills (the õPremisesö).

2. Defendant answers Paragraph ÷2ø of the Complaint as follows:

  a) Defendant does not have sufficient information or knowledge to admit or deny whether

   Dennis Bunnell is an individual, resident, or citizen of the State of Massachusetts, nor

   whether Dennis Bunnell is the husband of Kathleen Bunnell.   To the extent that Dennis

   Bunnell is not a resident or citizen of the State of Massachusetts, then subject matter

   jurisdiction does not exist and this court lacks jurisdiction over this action.

3.  Defendant answers Paragraph "3" of the Complaint as follows:

    a)  Defendant Farzad Haghighi is an individual, resident and citizen of the State of New York.

    b)  Defendant does not reside at 110 Puritan Avenue, Forest Hills.

4.  Defendant answers Paragraph "4" of the Complaint as follows:

    a)  Defendant lacks information or knowledge sufficient to admit or deny whether Plaintiffs are citizens of Massachusetts.

    b)  To the extent that either Plaintiff-party is not a resident or citizen of the State of Massachusetts, then subject matter jurisdiction does not exist and this court lacks jurisdiction over this action.

5.  Defendant answers Paragraph "5" of the Complaint as follows:

    a)  Venue is proper only if subject matter jurisdiction exists.

6.  Defendant denies the allegations in Paragraph "6" of the Complaint in its entirety.

7.  Defendant answers Paragraph "7" of the Complaint as follows:

    a)  Defendant lacks sufficient information or knowledge to admit or deny whether Plaintiff is the actual owners of the Premises.

    b)  Defendant lacks information or knowledge as to what a title search of the Premises would reveal, including anything that might render title un-marketable.

8.  Defendant denies the allegations in Paragraph "8" of the Complaint in its entirety.

    a)  Please refer to Section 28(a) of the form "Residential Contract of Sale", which states the following:

    > 28.    (a)   All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

    b)  Therefore, there were no representations made by either party outside the four corners of

the documents.

9. Defendant answers Paragraph "9" of the Complaint as follows:

   a) Defendant hereby Defendant denies the existence of a valid or enforceable agreement
      since:

      i) the form "Residential Contract of Sale" is missing a "Schedule A", as required by
         Paragraph 1 of the form "Residential Contract of Sale", and

      ii) the purported escrowee, Eric C. Firestone, Esq. did not execute the form "Residential
          Contract of Sale", as required on the last page of the form "Residential Contract of
          Sale."  Accordingly, the downpayment of One Hundred Twenty Five Thousand
          Dollars ($125,000) was never permitted to be deposited into Eric C. Firestone's IOLA
          account in the first place.

   b) Therefore, the following answers are only applicable to the extent that a valid or
      enforceable agreement was/is in effect:

10. Defendant denies the allegations in Paragraph "10" of the Complaint to the extent that no valid
    or enforceable agreement was entered into.

11. Defendant denies the allegations in Paragraph "11" of the Complaint to the extent that no valid
    or enforceable agreement was entered into.

12. Defendant denies Paragraph "12" of the Complaint, and answers as follows:

    a) Section 9 of the Second Rider states the following:

       "[I]f purchaser's lender withdraws the commitment or fails to fund the loan for any reason,
       other than purchaser's fault, purchaser shall be entitled to extension of time to obtain a new
       commitment."

    b) Section 9 of the Second Rider is only applicable "if purchaser's lender withdraws the
       commitment or fails to fund the loan for any reason".  This means that Defendant would

3

have *first* had to receive a commitment in order for the above section to be applicable. Because Defendant never received a commitment, this section is inapplicable.

c) In any event, even if Section 9 of the Second Rider is applicable, then "purchaser shall be entitled to an extension of time...."  This means that Defendant has the entitlement, or *option*, of an extension of time "to obtain a new commitment."  Nowhere is Defendant required to take any steps to obtain a second commitment, even if a first commitment was issued and then either (i) "withdrawn" or (ii) "not-funded".   Thus, Defendant was never required to take any steps to try to obtain a second commitment.

d) Plaintiff's counsel, at Paragraph "12" of the Complaint states that there was an "understanding" between the parties.   However, Plaintiff's counsel is incorrect.   Section 28(a) of the form "Residential Contract of Sale", states the following:

> 28.    (a)   All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

Therefore, the document needs to be reviewed within its four corners, as the document itself is determinative, and not any alleged "understanding" between the parties.

13. Defendant denies Paragraph "13" of the Complaint in its entirety.

a) Defendant reiterates its answer found in Paragraph 12 of this Answer above.

b) Pursuant to the terms of the form "Residential Contract of Sale", First Rider, and Second Rider, Defendant is entitled to return of the downpayment in the event that Defendant does not receive a mortgage commitment.

14. Defendant denies Paragraph "14" of the Complaint, and answers as follows:

a) Section 10 of the Second Rider states the following:

"If purchaser loses the commitment or the rate lock expires due to any delay in closing the

4

transaction other than as a result of purchaser's fault, Seller shall grant an extension of time to allow Purchaser to obtain a new commitment and/or issue a credit to Purchaser for the cost of obtaining a new commitment or rate extension."

b) Section 10 of the Second Rider is only applicable "if purchaser loses the commitment or the rate lock expires due to any delay in closing".   Therefore, the above section in inapplicable for the following reasons:

   i) In order for the Defendant to "lose a commitment", Defendant would have *first* had to receive a commitment.   In this case, no commitment was ever received.

   ii) In order for a "rate lock to expire", Defendant would have *first* had to receive a commitment, locked in a rate, and then had a rate lock expire.   In this case, no commitment was ever received.

   iii) The fact that the words "new commitment" are used in the Section shows that a commitment would need to be issued *first* in order for this Section to apply.   Because Defendant never received a commitment, this section is inapplicable.

c) Therefore, Section 10 of the Second Rider is not even applicable in this case.

d) In addition, Section 10 of the Second Rider uses the word "allow", which means that Defendant has the entitlement, or *option*, of an extension of time "to obtain a new commitment."

e) In any event, even if Section 10 of the Second Rider is applicable, then, nowhere is Defendant required to take any steps to obtain a second commitment, even if a first commitment was issued and then either (i) "purchaser loses the commitment" or (ii) "the rate lock expires".   Thus, Defendant was never required to take any steps to try to obtain a second commitment.

f) Even so, Section 10 of the Second Rider states that "Seller shall grant an extension of time

to allow Purchaser to obtain a new commitment"   "   Plaintiff's counsel does not even

allege anywhere that Seller took any steps "to grant an extension of time."

g)   Defendant re-iterates Paragraph 12 of its answer.

15. Defendant denies Paragraph "15" of the Complaint and answers as follows:

a)   Section 6 of the First Rider states the following:

> This sale is conditioned upon the Purchasers obtaining a conventional mortgage in the amount of $750,000.00 for a term of at least 30 years, at the prevailing rate of interest per annum the proceeds of which mortgage are to be used on account of the payment of the purchase price as herein provided.

b)   This means that Defendant's obligation to close on the purchase of the Premises is

*conditioned* upon Defendant obtaining a conventional mortgage in the amount of

$750,000.00 for a term of at least 30 years.   In this case, Defendant did not obtain such a

conventional mortgage, and therefore, the contingency is not satisfied, and Defendant is

not required to close on the purchase of the Premises.

c)   Section 6 of the First Rider also states the following:

> Such mortgage shall be obtained by the Purchasers at their own cost and expense and the Purchasers hereby agree to immediately make diligent, truthful and proper application for said mortgage and to furnish all information and records that may be required for said application to the lending institution to whom application is made.  The Purchasers shall have until 45 days from the date Purchasers' attorney receives fully executed contracts to obtain a firm commitment for said mortgage.

d)   In this case, Defendant immediately made a diligent, truthful, and proper application for a

mortgage commitment, and furnished all information and records requested by the lending

institution directly to the lending institution.   In fact, nowhere does Plaintiff even allege in

its Complaint that Defendant did not make a diligent, truthful, or proper application, nor

that Defendant failed to furnish any information or records to any lending institution.

Here, Defendant did not obtain a mortgage commitment during the *contingency* time

allotted, which is 45 days from the date Defendant's attorney received a fully executed contract.

e)  Section 6 of the First Rider also states the following:

> If without fault on their part, Purchasers are unable to obtain a mortgage commitment as provided for herein by the aforementioned date, either party may elect to cancel this contract by written notice being given, the deposit paid hereunder shall be returned to the Purchasers and thereupon this contract shall cease and terminate without further liability on the part of either party to the other.

f)  This means that, absent Defendant's fault, if Defendant does not obtain a mortgage commitment during the contingency time allotted, then either the Plaintiff or the Defendant has the option of canceling the contract, whereupon the downpayment of $125,000 would be immediately returned to the Defendant.

g)  In this case, Defendant was not at fault, and Defendant did not obtain the mortgage commitment during the contingency time allotted.   Therefore, the downpayment was and is required to be returned to the Defendant.

16. Defendant denies Paragraph "16" of the Complaint and answers as follows:

a)  Section 23 of the form "Residential Contract of Sale" states the following:

> 23.    (a)    If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.
> (b)    If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

b)  The above provisions are applicable in the event a party fails to close on either selling or purchasing the Premises, *provided that all contingencies and conditions to close are satisfied*.

c)  In this case, Defendant has not defaulted since Defendant did not obtain a mortgage commitment as provided for in the contingency, and therefore Defendant is not obligated

7

to close on the purchase of the Premises.

d) Section 23(a) is only applicable if Defendant defaults on its obligations to close on the purchase of the Premises, and can therefore only possibly be applicable in the event that the mortgage commitment contingency is waived or satisfied.   Here, the mortgage commitment contingency was never waived nor satisfied.

e) In any event, once, and even if Defendant's mortgage commitment contingency has been waived or satisfied, then, Defendant would be required to close on the purchase only if the following conditions to closing are also satisfied:

(i)     Section 13 of the form "Residential Contract of Sale", which requires Plaintiff, as seller, to deliver insurable title,

(ii)    Section 14 of the form "Residential Contract of Sale", which requires Plaintiff to deliver a bargain and sale deed with covenants against grantors acts that meets all of Plaintiffs' requirements as to said section, and

(iii)   Section 16 of the form "Residential Contract of Sale", which imposes eight (8) additional conditions upon Defendant's obligation to close.

d) All of the foregoing would be conditions to Defendants' obligation to actually close on the purchase of the Premises.   This means that in order for Defendant to possibly be found in default, Plaintiff would have to demonstrate that it has complied with all of its obligations and representations under the contract, such as, that Plaintiff has insurable and marketable title, and that Plaintiff is ready, willing, and able to close on the sale.   None of the foregoing has been demonstrated by the Plaintiff.

e) In fact, under New York State case law, the proper way for a Plaintiff to demonstrate the same is to actually prepare for a closing, serve the Defendant with a minimum thirty (30)

days time of the essence demand to close, schedule a closing, and come to a closing with a stenographer that records that Plaintiff has complied with all of its obligations under the contract, and is thus ready, willing, and able to close.   There must be a "stay" on Plaintiffs ability to conduct the acts mentioned in this paragraph until a disposition is made by this court on the issue of the downpayment.

17. Defendant denies the allegations in Paragraph "17" of the Complaint in its entirety and answers as follows:

a)  Defendant visited the Premises, as permitted by the terms of the contract, in order to take measurements, figure out what kind of furniture to buy and where to place the same, and to figure out what kinds of drapery and curtains to install.

18. Defendant denies the allegations in Paragraph "18" of the Complaint and answers as follows:

a)  Defendant was very interested in purchasing the Premises.

b)  It is not up to Defendant to schedule an appraisal.   It is up to the bank to schedule an appraisal, and that was not done because the Defendant was denied on Defendant's mortgage commitment application in the first place.   In any event, banks generally tender a conditional commitment *before* an appraisal is even ordered.

c)  In our case, no conditional commitment was even issued, and therefore, there is nothing suspicious with the fact that an appraisal was not ordered by the bank.   In fact, the mortgage commitment contingency in this contract called for a firm commitment, which is more stringent and more difficult to obtain than a conditional commitment anyways.

d)  Defendant is not required to order an engineering inspection.   In any event, Defendant received an engineering report dated June 3, 2012 from the real estate broker.   The report was ordered by a prior prospective purchaser who was in contract to buy the Premises,

which deal did not close.   The prospective purchasers' name is Jack Tortoroli.   We must find out whether the Plaintiffs tried to unjustly retain his downpayment as well.

e)  Defendant is not required to communicate with the Plaintiffs nor the real estate broker. The communications are done through the attorneys for both parties.   In any event, (i) Defendant's counsel stayed in contact with Plaintiff's counsel, and (ii) Defendant did stay in contact with the real estate broker.

19. Defendant agrees with Paragraph '19' of the Complaint.

20. Defendant denies all allegations in Paragraph '20' of the Complaint in its entirety.

   a)  Defendant did not act in bad faith at any time.

21. Defendant denies the allegations in Paragraph '21' of the Complaint and answers as follows:

   a)  Defendant had looked at many properties that he was considering to purchase for many months.   He had seen the Premises (120 Greenway North), the 110 Puritan Avenue property ("Alternate Premises"), and many other properties.   Out of all the properties that the Defendant had seen, he liked the Premises the most, and the Alternate Premises the second most.   In fact, he had contracts sent to him for both the Premises and Alternate Premises.   However, since he liked the Premises more, he chose to enter into contract for the Premises, and left the contract for the Alternate Premises to the side.   Defendant promptly engaged Landmark Funding Group to process his application for a mortgage commitment on the Premises for the amount of $750,000 for a term of 30 years, as provided for in the contract.

   b)  On August 25, 2012 Defendant was informed that Defendant was denied on such mortgage commitment application.   Accordingly, he executed the contract for the Alternate Premises the same day.

   c)  Please see the following excerpt from Landmark Funding Group's letter dated December 5, 2012:

> On 8/25 we advised Mr. Haghighi that the bank informed us they will not be able to be approved as submitted based on the program in conjunction with the credit profile. Upon that Mr Haghighi then signed contract on a cheaper house on which he was able to get an approval based on the regular Fannie guidelines.

d)  Landmark Funding Groups letter dated September 19, 2012 states the following:

> Please note, the submission date on the timeline schedule is reflecting only when the loan was fully complete and submitted to the lender. However we worked on obtaining and putting together the documentation a few weeks earlier. We only submit to the lender once all documentation has been obtained.

e)  The above shows that Defendant had been working with Landmark Funding Group on getting all documentation and information they needed to complete his application for a mortgage commitment well in advance of the mortgage registration date of August 20, 2012.   Please see the following excerpt from the Status History Report:

**STATUS HISTORY**                                                   Print

Flagstar Loan Number: ~~~~~~~~

| Date | Status | User |
|---|---|---|
| 08/27/2012 14:55:54 | DENIED | EBAUMGAR |
| 08/21/2012 16:41:18 | Submitted to Underwriting | AATHUKOR |
| 08/21/2012 10:39:13 | Submission Conditions Received | LOS_APPID |
| 08/20/2012 15:47:36 | Submission Hold | AATHUKOR |
| 08/20/2012 14:32:30 | Image Package Received | LOS_APPID |
| 08/20/2012 12:50:46 | APPLICATION REGISTRATION | LOS_APPID |

f)  In fact, Defendants credit was run well before August 20, 2012 as well.   Please see the attached excerpt from Flagstar Banks letter dated September 18, 2012:

> Your Credit Score: 690
> Date: 8/15/2012
> Score ranges from a low of 334 to a high of 818
> Key factors that adversely affected your credit score:
>     Too many inquiries last 12 months
>     Number of bank or national revolving accounts with balance
>     Amount owed on revolving account is too high
>     Lack of recent installment loan information

g)  The contract price for the Alternate Premises ($805,000) was significantly lower than the

contract price for the Premises ($1,250,000).   Accordingly, the mortgage amount that Defendant applied for on the Alternate Premises was $400,000, and Defendant was approved for such loan amount.   Therefore, Defendant was able to get his bank to fund the loan of $400,000 on the Alternate Premises, and he was able to close on the purchase of the Alternate Premises.

h)  Defendant's entering into the contract for the Alternate Premises did not in any way affect his application for the mortgage of $750,000 for the Premises.   Defendant had already been rejected for the $750,000 loan, and then *subsequently* entered into contract for the Alternate Premises.

i)  The letter dated September 18, 2012 from Flagstar Bank states that Defendant had put in an application for the mortgage loan with Flagstar, and the reasons why Defendant was denied.

   i)  None of the reasons for denial have anything to do with Defendants' contract to purchase the Alternate Premises.

   ii)  The fact that Defendant entered into contract for the Alternate Premises and closed on the Alternate Premises is completely (i) independent of, (ii) has no bearing on, (iii) did not affect, and (iv) did not contribute to the fact that Defendant was denied on its mortgage application for the Premises.

   iii)  Defendant was simply not approved for a $750,000 'jumbo' mortgage commitment.

22. Defendant denies the allegations in Paragraph '22' of the Complaint and answers as follows:

   a)  Defendant did not act in bad faith at any time.

   b)  Defendant properly applied for a mortgage commitment in the amount of $750,000, for a term of 30 years, in connection with the Premises, as provided for in (i) Section 8 of the

form õResidential Contract of Saleö and (ii) Section 6 of the First Rider.   Ira Penn, Esq.øs

letter dated September 28, 2012 affirmatively states that Defendant properly applied for

said mortgage commitment.

c)  Section 8 of the form õResidential Contract of Saleö states the following:

| Mortgage Contingency: | 8. *(Delete if inapplicable)* The obligations of Purchaser hereunder are conditional upon issuance on or beore 45 days after Purchaser's attorney receives fully executed contracts, |
|---|---|

(continued on next page of documentí  )



20  , (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $750,000.00 or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest not to exceed          or initial adjustable rate of interest not to exceed n/a for a term of at least 30                            years and on



d)  This means that Defendant is to apply for a mortgage commitment in the amount of

$750,000.00 for a term of 30 years.   This is exactly what Defendant did.

e)  Defendant did not seek a mortgage backed by Fannie Mae.   Defendant applied to Flagstar

Bank, an institutional lender, through Landmark Funding Group, which are both private,

non-governmental entities.

f)  Please refer to the September 18, 2012 letter from Flagstar Bank, which states the

following:

**application to Flagstar Bank for a Jumbo 30-Year Fixed mortgage loan was declined**

g)  This shows that Defendant duly applied for the proper loan, as he applied for a ñjumboø

ñJumboö is a term that is used when applying for a loan greater than $625,500 for a

one-family home (the Premises are a one-family home).   Defendant did not apply for a

ñFannie Mae loanø

h)  ñJumboø loans are much more difficult to be approved for than non-jumbo loans.   Please

13

see the following excerpt from Landmark Funding Group∅s letter dated September 19,

2012:

> Since this loan is a super jumbo loan and does not qualify for
> Fannie or Freddie programs the guidelines are a lot stricter.
> Mr. Haghighi's credit history was insufficient for approval of
> a jumbo loan.

i) Please refer to Landmark Funding Group letter dated September 19, 2012, which states:

> The underwriter did not feel the borrower has sufficient
> trade-lines for an approval for a super-jumbo loan. Trade line
> refers to any liability that would come up on a credit report.

j) Please refer to Landmark Funding Group letter dated December 5, 2012, which states:

> Please not that we did not submit this loan under a Fannie Mae
> program because of the $625,500 loan limits. Since he was applying
> for $750,000 loan we submitted it to the portfolio program which goes
> up to $2m.

k) Defendant did not apply for a õVA, FHA or other governmentally insured loan.ö

Therefore, Defendant complied with the terms of the mortgage commitment contingency.

23. Defendant denies Paragraph –23∅of the Complaint and answers as follows:

a) Defendant did not act in bad faith at any time.

b) Defendant applied for a $750,000 mortgage commitment, pursuant to the terms of the

contract.   A mortgage commitment for an amount of $750,000 is a large amount.   It is not

easy to receive or be approved for.   Here, Defendant applied for said mortgage

commitment, and was not approved, and therefore did not receive a mortgage commitment.

c) Defendant was informed that he would be denied on the mortgage commitment application

on August 25, 2012.

24. Defendant denies Paragraph –24∅of the Complaint and answers as follows:

a) Defendant had looked at many properties that he was considering to purchase for many

months.   He had seen the Premises, the Alternate Premises, and many other properties. Out of all the properties that the Defendant had seen, he liked the Premises the most, and the Alternate Premises the second most.   In fact, he had contracts sent to him for both the Premises and Alternate Premises.   However, since he liked the Premises more, he desired to enter into contract for the Premises, and left the contract for the Alternate Premises to the side.

b)  Therefore, the contract for the Alternate Premises was already "out" and in his hands.

c)  However, since he was attempting in good faith to obtain a mortgage commitment for the Premises, he did not sign the contract for the Alternate Premises.   He kept that contract to the side.

d)  Once he found out that he was denied for the mortgage commitment on the Premises, he acted fast, so as to not lose out on the opportunity to buy his second choice property, the Alternate Premises.

e)  He therefore executed the contract for the Alternate Premises immediately.

f)  Plaintiffs' allegations are meritless and speculative.

25. Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph "25" of the Complaint.

26. Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph "26" of the Complaint, and answers as follows:

a)  Defendant did not act in bad faith at any time.

27. Defendant denies Paragraph "27" of the Complaint and answers as follows:

a)  Defendant did not act in bad faith at any time.

b)  Defendant tendered all documentation in its possession to demonstrate its good faith, even

though (i) Defendant was not required to tender such documentation, (ii) some of the documentation requested contained personal and confidential information, and (iii) some of the documentation requested were irrelevant.

c)  The documentation attached as exhibits to Plaintifføs complaint demonstrate on their face that Defendant acted in good faith.

d)  Defendant was not required to seek another mortgage commitment after getting denied on its mortgage commitment application.

e)  Defendant applied for the mortgage commitment in good faith.   He did not know whether or not he would ultimately be denied.   He hoped that he would be approved.   In this case, he happened to get denied.

f)  Defendant was denied on his application for a mortgage commitment for many reasons:

 i)  Please refer to the September 19, 2012 letter from Landmark Funding Group, which states the following:

> The underwriter did not feel the borrower has sufficient trade-lines for an approval for a super-jumbo loan. Trade line refers to any liability that would come up on a credit report. Since this loan is a super jumbo loan and does not qualify for Fannie or Freddie programs the guidelines are a lot stricter. Mr. Haghighi's credit history was insufficient for approval of a jumbo loan.

Defendant was not able to obtain a mortgage commitment as such.   A $750,000 loan is more difficult to obtain.

 ii)  The September 19, 2012 letter then states the following:

> Since he does not have sufficient trade-lines and did not own a property in the past 3 years the underwriter did not feel he has a strong enough credit history to be considered credit worthy of such a large loan.

Defendant was not credit worthy for a $750,000 loan.

iii) Finally, the September 19, 2012 letter also states the following:

> Please note the Fannie Mae guidelines are much more lenient than portfolio jumbo programs however Fannie Mae will not exceed $625,500 on a one family property.

Defendant applied for a $750,000 mortgage commitment.   A $750,000 loan is more difficult to be approved for, as compared to a loan less than $625,500.   There are stricter guidelines involved.

iv) Please refer to the September 18, 2012 letter from Flagstar Bank, which states the following reasons as to why Defendant was denied the mortgage commitment:

- Borrower has not owned a primary residence in the last 3 years
- Insufficient credit file
- Information from consumer reporting agency
- We do not grant credit to any applicant on the terms and conditions you have requested

v) The September 18, 2012 letter also states the following:

> Your Credit Score: 690

This is a low credit score for someone to be able to be approved for a $750,000 loan.

g)  Defendant executed the contract to purchase the Alternate Premises as soon as he got word that his mortgage commitment application for the Premises was denied.   Defendant acted quickly so as to not lose out on the opportunity to purchase his second choice property.

28. Defendant answers Paragraph ⸗28ǿof the Complaint as follows:

a)  Defendant re-iterates its answers to Paragraphs 1-27 above.

29. Defendant denies the allegations in Paragraph ⸗29ǿof the Complaint in its entirety and answers as follows:

a)  Defendant did not act in bad faith at any time.   Defendant properly applied for a mortgage commitment, as provided for in the contract, and was denied.

b) Defendant was not required to make a second application to try to obtain a mortgage commitment after first getting denied.   Even so, Defendant would have received a denial on such application as well.   This is because we are dealing with a 'jumbo' loan.

c) Defendant was not in simultaneous contract for two properties.   Even so, had Defendant been in simultaneous contract, it would not have affected the fact that he was denied for the mortgage commitment.

d) Defendant did not apply for a Fannie Mae backed mortgage.   Defendant applied to an institutional lender for a non-governmental loan, in the amount of $750,000, as provided for in the contract.

e) Defendant is not in breach of the contract.   The mortgage commitment contingency has not been satisfied.   Therefore, Defendant is entitled to receive Defendant's downpayment back.

30. Defendant denies Paragraph '30' of the Complaint and answers as follows:

a) Defendant has not defaulted under the contract.

b) Defendant has not breached the contract.

c) Defendant has made proper application for the mortgage commitment, as provided in the contract.   Defendant was denied the mortgage commitment.

d) Defendant's then counsel, Nina Bompart, Esq., per letter dated August 28, 2012, informed Plaintiff's then counsel, Eric C. Firestone, Esq., that Defendant had been denied.   Please refer to the following excerpt from said August 28, 2012 letter:

> **Enclosed please find a Statement of Credit Denial from Flagstar Bank.
> Accordingly, pursuant to paragraph 8 of the Contract of Sale, kindly cancel the Contract
> and refund the downpayment.**

e) Section 8 of the form "Residential Contract of Sale" states the following:

> If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser

The above states that if Defendant does not receive the mortgage commitment, that Defendant may cancel the contract upon notice and that the downpayment shall be promptly refunded to Defendant.

f) In addition, Section 6 of the First Rider states the following:

> If without fault on their part, Purchasers are unable to obtain a mortgage commitment as provided for herein by the aforementioned date, either party may elect to cancel this contract by written notice being given, the deposit paid hereunder shall be returned to the Purchasers and thereupon this contract shall cease and terminate without further liability on the part of either party to the other.

The above states that if Defendant does not receive the mortgage commitment, that either Plaintiff or Defendant may elect to cancel the contract upon written notice, and that the deposit (downpayment) shall be returned to Defendant.

g) In this case, Defendant was denied on its mortgage commitment application.

h) Accordingly, Defendant's then counsel, Nina Bompart, Esq. exercised Defendant's right to elect to send written notice to Plaintiffs' then counsel, Eric C. Firestone, Esq., demanding return of the downpayment and the appurtenant canceling of the contract.

i) Eric Firestone, Esq., and Plaintiff have failed to return the downpayment.

j) Therefore, the contract has not been canceled and is currently an "open" contract.

31. Defendant denies Paragraph "31" of the Complaint in its entirety and answers as follows:

a) Plaintiff is not entitled to declaratory judgment.

b) Defendant has not defaulted, breached, nor repudiated the contract.

c) Defendant's downpayment must be returned.

32. Defendant answers Paragraph "32" of the Complaint as follows:

a) Defendant re-iterates its answers to Paragraphs 1-31 above.

33. Defendant denies Paragraph "33" of the Complaint in its entirety and answers as follows:

a) Defendant acted in good faith at all times.

34. Defendant denies Paragraph "34" of the Complaint and answers as follows:

a) Defendant acted in good faith at all times.

b) Defendant's downpayment of $125,000 must be returned to Defendant.

## DEFENSES

35. As and for Defendant's First Defense:

a) Defendant re-iterates all of Defendant's answers and appurtenant defenses in Paragraphs 1-34 of this answer above.

36. As and for Defendant's Second Defense:

a) Eric C. Firestone, Esq., is the attorney and escrow agent holding the downpayment of $125,000.

b) Eric C. Firestone, Esq. is the one that will need to be ordered to release the downpayment to Defendant.

c) Accordingly, Eric C. Firestone, Esq. must be joined as a party to this action.   (See Fed. R. of Civ. Pro. Rule 12(b) (7) and Rule 19(a)).

d) Eric C. Firestone, Esq.'s contact information is as follows:

i) Eric C. Firestone, Esq.
Attorney At Law
61-43 186th Street
Fresh Meadows, NY 11365
Tel: (718) 575-0009

37. As and for Defendant's Third Defense:

a) Notice is defined in Section 25 of the form "Residential Contract of Sale" as follows:

Notices:

> 25.  Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys wha are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or
>
>     (b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph.  Each notice mailed shall be deemed given on the third business day following

> the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered.

Therefore, all Notices must be (i) in writing and (ii) tendered a specific way.

b) Section 6 of the form "Residential Contract of Sale" states the following:

> If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment.

c) In this case, Nina Bompart, Esq. tendered a written letter dated August 28, 2012 to Eric C. Firestone, Esq. by both facsimile and certified mail demanding return of the downpayment. This is deemed "Notice to Escrowee demanding payment of the downpayment."

d) There is no evidence that Eric C. Firestone, Esq. subsequently gave any written Notice to Plaintiff of Defendant's demand ("Escrowee shall give prompt Notice to the other party of such demand.").   This is fatal.

e) Therefore, pursuant to Section 6 of the form "Residential Contract of Sale", the downpayment must be returned to Defendant ("Escrowee is authorized and <u>directed</u> to make such payment.").

## **COUNTERCLAIM**

38. As and for Defendant's Counterclaim:

a)  Defendant entered into a contract of sale made as of July 27, 2012 for the purchase of 120 Greenway North, Forest Hills (the "Premises").

   i)  Please refer to first page of form "Residential Contract of Sale":

> **CONTRACT OF SALE**, made as of July 27 2012

b)  The contract purchase price was $1,250,000.00.

   i)  Please refer to Section 3 of form "Residential Contract of Sale":

> *Purchase Price:* | 3. The purchase price is **$1,250,000.00**

c)  To evidence Defendant's good faith in entering into said contract, Defendant tendered a downpayment of ten percent (10%) of the purchase price, which is $125,000.00.

   i)  Please refer to Section 3 of form "Residential Contract of Sale":

> | "Downpayment"): | **$125,000.00**

d)  Defendant's obligations to close were conditioned upon the issuance, within 45 days, of a mortgage commitment, for a loan in the amount of $750,000.00, and for a term of 30 years.

   i)  Please refer to Section 8 of form "Residential Contract of Sale":

> *Mortgage Contingency:* | 8. *(Delete if inapplicable)* The obligations of Purchaser hereunder are conditional upon issuance on or beore 45 days after Purchaser's attorney receives fully executed contracts,

(continued on next page of document…)

> 20____, (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $750,000.00 or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest not to exceed ____ or initial adjustable rate of interest not to exceed n/a for a term of at least 30 ____ years and on



   ii)  Please also refer to Section 6 of the First Rider:

> This sale is conditioned upon the Purchasers obtaining a conventional mortgage in the amount of $750,000.00 for a term of at least 30 years, at the prevailing rate of interest per annum the proceeds of which mortgage are to be used on account of the payment of the purchase price as herein provided.

e) Defendant duly applied for a mortgage commitment but happened to get denied.

   i) Please refer to the Statement of Credit Denial.

   ii) Please also refer to September 18, 2012 letter from Flagstar Bank:

   > application to Flagstar Bank for a Jumbo 30-Year Fixed mortgage loan was declined

f) Defendant's mortgage commitment contingency was not satisfied and Defendant is entitled to return of Defendant's downpayment.

   i) Please refer to Section 8 of the form "Residential Contract of Sale":

   > If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser

   ii) Please also refer to Section 6 of the First Rider:

   > If without fault on their part, Purchasers are unable to obtain a mortgage commitment as provided for herein by the aforementioned date, either party may elect to cancel this contract by written notice being given, the deposit paid hereunder shall be returned to the Purchasers and thereupon this contract shall cease and terminate without further liability on the part of either party to the other.

g) Defendant's counsel, Nina Bompart, Esq., sent written notice to the escrow agent, Eric C. Firestone, Esq., demanding return of the downpayment.

   i) Please refer to Nina Bompart's letter dated August 28, 2012, sent via facsimile and certified mail:

   > Enclosed please find a Statement of Credit Denial from Flagstar Bank. Accordingly, pursuant to paragraph 8 of the Contract of Sale, kindly cancel the Contract and refund the downpayment.

h) Defendant's downpayment of $125,000.00 must be returned.

23

**WHEREFORE,** Defendant demands judgment as follows:

1.      Joining Eric C. Firestone, Esq. as a party to this action;

2.      Returning Defendant's downpayment to Defendant, by ordering Eric C. Firestone, Esq. to release the downpayment of $125,000.00 to Defendant;

3.      Directing judgment to be entered against Plaintiff and in favor of Defendant in the amount of $125,000.00, in the event Eric C. Firestone, Esq. is (i) not holding the downpayment or (ii) does not release the downpayment as directed;

4.      Granting a lien against the title to the Premises, in favor of Defendant, for the amount of the downpayment;

5.      Directing that the contract of sale shall remain open and pending, at least until after a disposition is made as to the downpayment, thus providing Defendant with the right to purchase the Premises, and thus affecting title to the Premises; and

6.      Granting to Defendant such other and further relief as is just and proper, together with reasonable attorney's fees.

Dated:    Jamaica, New York
          March 25, 2013

                                    Yours etc.,


                                    _____
                                    Daniel Alliance, Esq. (da5273)
                                    *Attorney for Defendant*
                                    159-13 Hillside Avenue
                                    Jamaica, New York 11432
                                    (718) 658-3100
                                    DanAllianceLawOffice@gmail.com

TO:    Law Offices of Dean T. Cho, LLC
       *Attorney for Plaintiff*
       Dean T. Cho (dc7986)
       440 Park Avenue South, 3rd Floor
       New York, NY 10016
       (646) 519-7135
       dtcho100@gmail.com

## <u>VERIFICATION</u>

State of New York )
County of Queens ) ss.:

Farzad Haghighi, being duly sworn, deposes and says that he is the Defendant in the within action; that he has read the foregoing Verified Answer and Counterclaim and knows the contents thereof; that the same is true to his own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters he believes them to be true.

_____
Farzad Haghighi

Sworn to before me this
March 25, 2013

_____
Notary Public

DANIEL ALLIANCE
Notary Public, State of New York
No. 02AL6194905
Qualified in Queens County
Commission Expires Dec. 18, 20 16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 27, 2013, a true and complete copy of the foregoing Verified

Answer and Counterclaim was, via the Court's CM/ECF system, filed with the Clerk of the Court,

and served upon the following counsel of record:

Law Offices of Dean T. Cho, LLC
*Attorney for Plaintiff*
Dean T. Cho (dc7986)
440 Park Avenue South, 3rd Floor
New York, NY 10016
(646) 519-7135
dtcho100@gmail.com


Daniel Alliance, Esq. (da5273)
*Attorney for Defendant*
159-13 Hillside Avenue
Jamaica, New York 11432
(718) 658-3100
DanAllianceLawOffice@gmail.com