UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
BUNNELL, et al.,               : 12-cv-06412-FB-SMG
               Plaintiff,    :
                         :
    - versus -              : U.S. Courthouse
                         : Brooklyn, New York
FARZAD HAGHIGHI,               :
             Defendant : August 28, 2013
------------------------------X


TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES CHIEF MAGISTRATE JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**


**For the Plaintiff**:      **Dean T. Cho, Esq.**
                              233 Broadway
                              Suite 2200
                              New York, NY 10279


**For the Defendant**:     **Michael Alliance, Esq.**




**Transcription Service**:   **Transcriptions Plus II, Inc.**
                              740 Sharon Road
                              Copiague, New York 11726
                              Transcriptions2@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

```
                    Proceedings                    2
```

1              THE COURT:  Mr. Cho?

2              MR. CHO:  Yes.

3              THE COURT:  It's Judge Gold.  How are you?

4              MR. CHO:  Good, Judge Gold.  How are you?

5              THE COURT:  Good.  We're on the record in

6  Bunnell v. Haghighi, 12-cv-6412.

7              Now I know you've been talking to my clerk

8  about your difficulties reaching Mr. Alliance.  Our

9  office has tried to reach Mr. Alliance many times since

10 you've filed your motion as well.  I'm going to try to

11 call there.  We were told that Mr. Alliance's brother is

12 an attorney who would be covering this matter today and I

13 am going to call their office now on a conference call

14 and we'll see if we can reach anybody there.  All right?

15             MR. CHO:  Very good.

16             (Pause)

17             (Conference call)

18             UNIDENTIFIED SPEAKER:  (Indiscernible) office.

19             THE COURT:  Yes, my name is Judge Gold.  I'm

20 calling from federal court in Brooklyn.

21             UNIDENTIFIED SPEAKER:  Yes.

22             THE COURT:  My office was in contact with yours

23 yesterday.

24             UNIDENTIFIED SPEAKER:  Yes.

25             THE COURT:  And we were told that there would

```
                    Proceedings                  3
```

1   be a lawyer available to represent defendant in Bunnell

2   v. Haghighi.

3               UNIDENTIFIED SPEAKER:  Yes, yes.  Hold on one

4   second, Judge, please.  I connect -- put you on with

5   Michael Alliance.  Hold on.

6               THE COURT:  All right.

7               (Pause)

8               MR. M. ALLIANCE:  Hello, Judge Gold.  How are

9   you?

10              THE COURT:  Is this Mr. Alliance?

11              MR. M. ALLIANCE:  It's Michael Alliance.  Yes.

12              THE COURT:  All right.  Well, how are you?

13              MR. M. ALLIANCE:  Good.  How's everything?

14              THE COURT:  Everything's fine but your client

15  is under a lot of pressure right now and I'm going to

16  give you a very expedited schedule for responding to the

17  TRO application that the plaintiff filed very recently.

18              MR. M. ALLIANCE:  Okay.

19              THE COURT:  I have some questions about the

20  application for the plaintiff though.  Mr. Cho is on the

21  line and we're on the record.

22              MR. M. ALLIANCE:  Okay.

23              THE COURT:  And so we're going to figure out

24  how we can get this resolved in the next couple of days.

25              MR. M. ALLIANCE:  Okay.

```
                        Proceedings                    4
 1            THE COURT:  Unless, Mr. Alliance, you're
 2   prepared to report that your client's prepared to
 3   withdraw this lis pendens forthwith.
 4            MR. M. ALLIANCE:  No, he's not prepared to do
 5   this.  This is still an open contract.
 6            THE COURT:  Yes.
 7            MR. M. ALLIANCE:  Title is in question.  I --
 8            THE COURT:  No.  Well, I don't think you have a
 9   genuine claim in that regard since your client couldn't
10   close on the contract because he couldn't get the
11   financing.
12            MR. M. ALLIANCE:  That's --
13            THE COURT:  So, I don't understand how the
14   contract can be open or how a good faith claim can be
15   made simultaneously that we can't get the financing to go
16   through with the contract but we want to go through with
17   the contract.  You can't make both of those claims
18   simultaneously and act in good faith, as far as I can
19   tell.
20            MR. M. ALLIANCE:  Well, the issue is is that he
21   couldn't obtain financing from a lender and he was -- he
22   couldn't get the financing.
23            THE COURT:  Right.
24            MR. M. ALLIANCE:  He has been speaking and he
25   has --
```

```
                         Proceedings                    5
 1          THE COURT:  But when was the contract made?

 2          MR. M. ALLIANCE:  Let me look in my records.

 3   Let me see the file one second.

 4          THE COURT:  No, that's not necessary.  We know

 5   it was made almost a year ago because the case was filed

 6   almost a year ago.

 7          MR. M. ALLIANCE:  Okay.

 8          THE COURT:  And so it's older than that.  I

 9   don't think anybody has a reasonable expectation that

10   they can ask a seller to wait over a year while you try

11   to obtain financing.

12          So here's our problem, Mr. Cho.  I see a few of

13   them.  Number one, as a magistrate judge, I don't have

14   the authority to issue this order.  So, the question is

15   whether to try to get you in front of the miscellaneous

16   judge this week or in front of Judge Block who can see

17   you on September 4th at noon.  So, if it can wait until

18   then, that would be my strong preference because this is

19   a very hard week to get in front of a court.

20          Second, your challenges to the lis pendens

21   trouble me in a few respects.  Number one, you say that

22   the lis pendens is invalid because the summons and

23   complaint wasn't served after the lis pendens was

24   obtained and you talk about strict construction but here,

25   the answer and counterclaim were clearly served upon the
```

Proceedings                                        6

1   plaintiff.  That meets the purpose of the procedural rule

2   and I think it's form over substance to talk about lack

3   of service on these circumstances.  You've known that an

4   answer and counterclaim that purports to raise a good

5   faith question about title to the property was served on

6   your client and you've known it for a long time.

7            MR. CHO:  Your Honor, may I respond?

8            THE COURT:  Not yet.  The second challenge we

9   have is that you say that there's no claim calling title

10  into question.  That's not true.  There's a claim pending

11  against you, your client and it's stated in the terms of

12  the statute and you've never moved to dismiss it.

13           The third problem we have is that you're asking

14  a federal court to order a state court to dissolve

15  something that was filed there, albeit in connection with

16  this case and I just don't -- I understand why you

17  brought it here but I am not sure a state court's going

18  to respond to a federal court order like that or that a

19  federal judge who is unfamiliar with some of the antics,

20  I'll use that word, of the defendant in this case will be

21  so quick to grant that relief in that context.

22           Finally, I am focusing on Section 6514(b) of

23  the CPLR which calls for discretionary cancellation when

24  a County Clerk can cancel a notice of pendency if the

25  plaintiff is not prosecuting the action in good faith.

```
                         Proceedings                    7
 1   Now I don't think that a defendant can in good faith say
 2   I can't go through with the closing but by the way, even
 3   though the money is in escrow, you can't sell the
 4   property either because if I could go through with the
 5   closing, I could buy the property (indiscernible) --
 6             MR. CHO:  Your Honor, can I respond to that?
 7             THE COURT:  -- later.  So now, Mr. Cho, yes,
 8   now you can respond.
 9             MR. CHO:  Okay.  Your Honor, with regards to
10   the -- first of all, the issue of the Court having the
11   power to order the cancellation, it's not ordering the
12   state court to do anything, it's ordering the County
13   Clerk to cancel the notice of pendency.  That is -- I
14   cited some cases from the -- a case from the Second
15   Circuit and the Eastern District of New York which makes
16   a claim that federal court can do that and, in fact, has
17   done that.
18             THE COURT:  Okay.
19             MR. CHO:  Okay.
20             THE COURT:  Can you point me to those cases in
21   your brief?
22             MR. CHO:  Yeah, yeah.
23             THE COURT:  I have your brief in front of me.
24             MR. CHO:  I can cite -- tell you the page
25   maybe; just one moment.
```

```
                          Proceedings                        8
 1            THE COURT:  Take your time.
 2            MR. CHO:  Because that was an issue that came
 3   to my mind, too.  I just wanted to make sure that this
 4   Court jurisdiction's do that. Okay.  I cited two cases;
 5   Diaz v. Paterson, 547 F.3d 88, and the point cite is page
 6   90 that the Second Circuit --
 7            THE COURT:  Can you tell me where in your brief
 8   it is?
 9            MR. CHO:  Oh, it's on page 10 of my brief.
10            THE COURT:  Just one second.  Diaz and Dunn v.
11   Wells Fargo.
12            MR. CHO:  Yes.
13            THE COURT:  Got it.  Haven't had a chance to
14   see them yet.  Thank you.
15            MR. CHO:  Okay.  The second issue is about the
16   service.  The answer in counterclaim, the statute 62 --
17   6512 and 6514 expressly refer to service of a summons,
18   not a complaint, a service of a summons.
19            THE COURT:  Oh, come on.  We don't have a
20   summons in federal practice.
21            MR. CHO:  No, no, but you see I cited a case
22   where it said that a state court held that there's an
23   affirmative commencement requirement and expressly
24   addressed the issue of an answer and counterclaim not
25   satisfying the test of 6512 and 6514.  I can cite that
```

```
                       Proceedings                      9
```

1   case to you.

2            THE COURT:  Okay.

3            MR. CHO:  Just one moment.

4            THE COURT:  Is that in your brief also?

5            MR. CHO:  Yes, that is in my brief --

6            THE COURT:  I can't --

7            MR. CHO:  -- because I expressly thought of

8   that issue, too but that issue has been addressed.  It's

9   -- just one moment.  Neiderfer -- oh, it's page 8, the

10  top of page 8, Neiderfer v. Hampton Design and

11  Construction Corp.

12           THE COURT:  Well, I see it but --

13           MR. CHO:  And that court expressly said that an

14  answer and counterclaim did not meet the summons --

15  service of a summons requirement, of 6512 and 6514.

16           THE COURT:  It seems like form over substance

17  to me but I'll take --

18           MR. CHO:  But the New York Court of Appeals has

19  expressly held that the terms of the lis pendens --

20           THE COURT:  Strictly construed; got it.

21           MR. CHO:  -- are to be strictly construed.

22           THE COURT:  Got that part.

23           MR. CHO:  And then also -- it's also plain that

24  under the case law and I cite it, that you have to serve

25  the papers directly on the property owners.  So, service

Proceedings                          10

1   on a real estate agent, service on an attorney doesn't

2   cut it.  And no service on the Bunnells was ever made.

3            THE COURT:  What are we going to --

4            MR. CHO:  Or even attempted.

5            THE COURT:  All right.  I understand your

6   argument.  Do --

7            MR. CHO:  And then as to the substance of the

8   claim, as your Honor has noted, they have no good faith

9   claim that they're seeking any title to the property but

10  they're not seeking specific performance, they seeking an

11  opt -- they're asking for an option.  That's something

12  that the Court can't give them because there's no option

13  provided in the contract.  You either sell it or you

14  don't.

15           The lawyers -- multiple lawyers sent letters

16  purporting to cancel the contract due to the financing.

17  So, they can't reopen the contract.  That's effectively

18  either a cancellation or a breach/repudiation of the

19  agreement.  Either way, you can't go back and try to

20  reopen the contract.

21           THE COURT:  Well, I think that's a particularly

22  persuasive argument.

23           MR. M. ALLIANCE:  Your Honor, may I interfere

24  for a second?

25           MR. CHO:  And --

```
                        Proceedings                11
```

1           THE COURT:  You can say whatever you want to

2     say.  I mean, the one thing Mr. Cho hasn't address is

3     that I don't have the jurisdiction to decide this unless

4     you folks want to consent to have it assigned to me for

5     all purposes.

6           MR. CHO:  We're happy to consent.

7           MR. M. ALLIANCE:  No, I will not consent.

8           THE COURT:  Yes, okay.  So, do you want to

9     appear before Judge Block at noon on September 4th or

10    before the miscellaneous judge tomorrow?

11          MR. CHO:  I am happy either way.

12          THE COURT:  All right.  Mr. Alliance, you can

13    get any opposing papers in by Friday morning, 10 o'clock.

14          MR. M. ALLIANCE:  Okay.

15          THE COURT:  And I will tell Judge Block to

16    expect you on September 4th at 12:00 noon.

17          MR. CHO:  Your Honor, just one thing.

18          MR. M. ALLIANCE:  Your Honor?

19          MR. CHO:  I have a court appearance in --

20          THE COURT:  That's when he's available.  He has

21    Rosh Hashanah after it.

22          MR. M. ALLIANCE:  Your Honor?

23          MR. CHO:  I --

24          THE COURT:  Excuse me.  That's when the Judge

25    is available.  That's the return time for the motion.

```
                         Proceedings                    12
```

1    What is it, Mr. Cho?

2              MR. CHO:  I was just wondering if we could just

3    be maybe moved back to 12:30, just to give me a little

4    more leeway in case this --

5              THE COURT:  I'll find out and I'll put the

6    answer in an order.  You can read it on ECF.

7              MR. M. ALLIANCE:  Your Honor?

8              MR. CHO:  Thank you, your Honor.

9              THE COURT:  Mr. Alliance?

10             MR. M. ALLIANCE:  Rosh Hashanah is that night?

11             THE COURT:  That's correct.  You'll be done --

12             MR. M. ALLIANCE:  And --

13             THE COURT:  -- you'll be done long before.

14             MR. M. ALLIANCE:  I mean --

15             THE COURT:  It gives you four or five hours

16   before Rosh Hashanah begins.  If you want to come in

17   tomorrow, you can come in tomorrow.

18             MR. M. ALLIANCE:  Well, then I wouldn't have an

19   opportunity to review the materials.

20             THE COURT:  Yes, that's because your office

21   didn't respond to our calls for two days.

22             MR. M. ALLIANCE:  Your Honor, I wanted to say a

23   few points if I can.

24             THE COURT:  Go ahead.

25             MR. M. ALLIANCE:  I want to make it clear to --

Proceedings                    13

1    on the record and also I think Mr. Cho is confused about

2    one matter.  I just want to make sure everything is

3    clear.  The cancellation of this contract would only be

4    effective if Mr. Cho's clients have returned the down

5    payment.  Since they haven't yet returned the down

6    payment, there's no cancellation.  That's the first point

7    I want to make.

8              Secondly, Haghighi can purchase the property

9    right now because he is able to get financing from a

10   private lender who happens to be his relative.  Now he is

11   able to purchase.

12             And one thing that I want to note that disturbs

13   me greatly is that last time we were at court, Mr. Cho --

14             THE COURT:  You were in court last time?

15             MR. M. ALLIANCE:  What?

16             THE COURT:  You were in court last time?

17             MR. M. ALLIANCE:  I came to court last time.  I

18   was there but my -- but Daniel Alliance was in front of

19   you.  And Mr. Cho stated on the record that the sellers,

20   the Bunnells, are renting out this property and are not

21   planning on selling it.  They're renting it out.  He made

22   it very, very clear that he is renting it out.  Why on

23   earth right now there's a secret contract out there and

24   they're planning on selling this property makes me feel

25   that the sellers are doing something out there.  And I

```
                        Proceedings                    14
 1   think we have to conduct an investigation into this.
 2   It's very possible that these sellers have brought this
 3   action in order to sell to somebody else.  Maybe they're
 4   -- they have another contract out there.  They can get
 5   more money.  So, what I would like to ask --
 6              THE COURT:  Oh, please.
 7              MR. M. ALLIANCE:  -- the Court today is for me
 8   to be allowed to get discovery.  I want to see this
 9   contract.  I want to see what's going on.  I think it's
10   very important for us to conduct an investigation into
11   this.
12              THE COURT:  Thank you, Mr. Alliance.  I see no
13   basis for your claim that this contract can just be held
14   in limbo by this dispute over the escrowed amount.  I'm
15   not going to give you discovery about that without full
16   briefing and some demonstration that you have some
17   cognizable claim under a contract that your client said
18   it couldn't perform a year later to keep the plaintiff
19   tied up, seems to me to be pure vindictiveness on your
20   client's part.  I don't think it's brought in good faith.
21   You are due in front of Judge Block at noon on Wednesday.
22              If you don't want to attend, I will urge the
23   Judge to decide it without hearing from you.  I will see
24   if he can do it at 12:30 instead but there is that air of
25   Rosh Hashanah issue.
```

Proceedings                    15

1          MR. M. ALLIANCE:  I would rather do it earlier.

2          THE COURT:  Excuse me.  If he can do it

3    earlier, Mr. Cho, could you do it at 10:00?

4          MR. CHO:  I have a court appearance in a very

5    important motion scheduled for 9:30 in State Supreme

6    Court in --

7          MR. M. ALLIANCE:  Then if that's the case, Mr.

8    Cho, then you have to work around my holiday.

9          THE COURT:  Okay.

10          MR. M. ALLIANCE:  I have (indiscernible).

11          THE COURT:  All right.  It was Judge Block who

12    picked noon on the 4th.  That's the way we'll keep it.

13          MR. M. ALLIANCE:  Thank you, your Honor.

14          MR. CHO:  Because I --

15          THE COURT:  Thank you, everybody.

16               (Matter concluded)

17                    -o0o-

18

19

20

21

22

23

24

25

16

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **29th** day of **August**, 2013.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.