UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x
KATHLEEN BUNNELL and DENNIS BUNNELL,    :

                                :

                     Plaintiffs,    :        <u>REPORT &</u>

                                :        <u>RECOMMENDATION</u>

        -against-              :        12-CV-6412 (FB)

                                :

FARZAD HAGHIGHI,                    :

                                :

                   Defendant.    :
----------------------------------------------------------------------x
GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

This case arises out of an agreement, never consummated, for the purchase by defendant

Farzad Haghighi of a home owned by plaintiffs Kathleen and Dennis Bunnell ("the Bunnells").

The Bunnells brought this action seeking a judgment declaring that defendant Haghighi breached

his agreement to purchase their home and that plaintiffs were, as a result, entitled to retain

Haghighi's $125,000 down payment.  Following a bench trial, Senior United States District

Judge Frederic Block issued a Memorandum and Order[1] finding in favor of defendant and

ordering the clerk to enter a judgment in favor of Haghighi in the amount of $125,000, plus

interest.  Docket Entry 81 ("Op.").

Presently before the Court are the Bunnells' outstanding motions for costs and attorney's

fees under Rule 6514 of the New York Civil Practice Law and Rules, Docket Entry 43, and for

sanctions under Rule 11 of the Federal Rules of Civil Procedure, Docket Entry 47.  Judge Block

has referred these motions to me for report and recommendation.  Op. at 13.  For the reasons that

follow, I respectfully recommend that the Bunnells' motions be granted and that fees and costs

be awarded in the amounts indicated below.

---

[1] 2015 WL 4522673 (E.D.N.Y. July 27, 2015), *appeal docketed*, No. 15-2407 (2d Cir. July 30, 2015).

**BACKGROUND**

While the Court assumes familiarity with Judge Block's Memorandum, a brief recounting

of the facts relevant to the instant motions is warranted.[2]  On August 12, 2012, a few weeks after

contracting to purchase the Bunnells' home for $1.25 million, Haghighi entered into a contract to

purchase another property (the "Alternate Property") for $805,000.  Op. at 2-3.  Haghighi

submitted mortgage applications with respect to both properties on August 20, 2012.  Op. at 3.

The application made in connection with the contract for the Bunnells' home was rejected on

August 27, 2012, while the application for the Alternate Property was approved at about the

same time.  Op. at 3-4.

On August 28, 2012, following the denial of his mortgage application for the Bunnells'

home, Haghighi sought to cancel the contract of sale and requested a refund of his deposit.

Complaint ("Compl.) Ex. D, Docket Entry 1.  Haghighi twice repeated this request in letters

dated September 28, 2012 and October 25, 2012.[3]  Compl. Ex. H.  Because of the parties'

dispute, Haghighi's down payment remained in escrow.  Compl. ¶ 1.  The Bunnells brought this

action seeking to have the escrowed funds released to them.  Haghighi answered the complaint

and asserted a counterclaim against the Bunnells.  Answer, Docket Entry 7.  Haghighi's

counterclaim demanded that the escrowed down payment be released to him.  Answer ¶ 38(h).

Of particular relevance to the pending motions, on February 28, 2013, Haghighi filed a

Notice of Pendency, or lis pendens, in Queens County Supreme Court on the Bunnells' home,

alleging that the judgment that he demanded in his counterclaim in this case would affect the

---

[2] In making this Report and Recommendation, I draw primarily from the following: Affirmation of Dean Cho in Support of Plaintiffs' Motion for Summary Judgment ("Cho Summ. J. Affirm."), Docket Entry 44, and attached exhibits, Docket Entries 44-46; Affirmation of Dean Cho in Support of Plaintiffs' Motion for Rule 11 Sanctions ("Cho Rule 11 Affirm."), Docket Entry 47-1, and attached exhibits, Docket Entries 48-54.
[3] Each of these letters was authored by different former counsel to Haghighi.

Bunnells' title to their property.  Cho Summ. J. Affirm. Ex. 18, Docket Entry 46-4.[4]  At that

point in time, however, Haghighi had not yet filed his answer to the complaint or asserted any

counterclaim.  In fact, Haghighi did not file his answer and counterclaim until March 27, 2013,

one month after he filed the lis pendens.  In his counterclaim, in addition to seeking the return of

his down payment, Haghighi seeks a judgment "directing that the contract of sale shall remain

open and pending, . . . thus providing Defendant with the right to purchase the Premises, and thus

affecting title to the Premises."  Answer, Wherefore Clause ¶ 5.

Haghighi failed to provide notice of the lis pendens to the Bunnells, who did not become

aware that it had been filed until months later, when it was discovered by a subsequent purchaser

who conducted a title search.  Pls.' Aff. in Supp. of Order to Show Cause ¶¶ 4-6, Docket Entry

26-1.  Thereafter, by order to show cause, the Bunnells moved to cancel the notice of pendency.

Docket Entry 26.  During an August 28, 2013 conference, counsel for Haghighi declined the

Court's suggestion that he withdraw the lis pendens, maintaining that Haghighi's contract to

purchase the Bunnells' home was still open.  Tr. 4:1-5, Docket Entry 27.  Judge Block thereafter

ordered the Queens County Clerk to cancel the lis pendens on September 5, 2013.  Docket Entry

30.

### DISCUSSION

I.      *Costs and Attorney's Fees under N.Y. C.P.L.R. 6514(c)*

In New York, a notice of pendency may be filed in either a state or federal court action

"in which the judgment demanded would affect the title to, or the possession, use or enjoyment

of, real property."  N.Y. C.P.L.R. 6501.  Claims affecting real property must be asserted at the

---

[4] The lis pendens was filed in Queens County Supreme Court with a caption naming Haghighi as plaintiff and the Bunnells as defendants.  The filing date is indicated by a clerk's stamp on the final page of the exhibit, Docket Entry 46-4 at 21.  However, the lis pendens referenced the instant federal court action as the case where a claim was pending that might affect title to the Bunnells' home.

time the lis pendens is commenced, and subsequent submissions cannot cure defects present at the time of filing.  *See 5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 319-20 (1984). Unless it is already pending in the county where the affected property is situated, the pleading seeking a judgment affecting title to the property must be filed with the notice of pendency. N.Y. C.P.L.R. 6511(a).  The party lodging the lis pendens must serve the property owner with a summons within thirty days of filing.  N.Y. C.P.L.R. 6512.  Failure to serve the required summons results in mandatory cancellation.  N.Y. C.P.L.R. 6514(a).  Indeed, each of the procedures for filing a lis pendens must be carefully followed; the New York Court of Appeals, "[t]o counterbalance the ease with which a party may hinder another's right to transfer property, . . . has required strict compliance with the statutory procedural requirements."  *5303 Realty Corp.*, 64 NY.2d at 320.

Where a notice of pendency has not been commenced or prosecuted in good faith, a court not only may direct cancellation of the notice, but also may order the filing party "to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action."  N.Y. C.P.L.R. 6514(b), (c); *see Josefsson v. Keller*, 141 A.D.2d 700, 701 (2d Dep't 1988).  The decision to award costs is addressed to the trial court's sound discretion.  *Hulko v. Connell*, 1990 WL 139022, at *4 (S.D.N.Y. Sept. 18, 1990).

Haghighi did not commence or prosecute the notice of pendency at issue here in good faith.  It is undisputed that Haghighi did not assert any claim at all, much less one that might bear on the title to the Bunnells' home, until one month after he filed the notice of pendency.  It follows that he violated C.P.L.R. 6511(a) by not filing a pleading asserting such a claim when he filed the notice of pendency.  Nor did Haghighi serve the Bunnells with a summons within thirty days of filing the lis pendens.

Moreover, the counterclaim Haghighi ultimately did file does not assert in good faith a claim that, if successful, might affect title to the Bunnells' home.  Haghighi argues that the contract of sale for the Bunnells' home remained open because the Bunnells failed to return the $125,000 deposit as required for its termination.  Def.'s Opp. to Mot. ("Def.'s Opp.") at 2-4, Docket Entry 87.[5]  Even assuming *arguendo* that the return of the deposit was technically required for formal termination of the contract, it is undisputed that Haghighi advised the Bunnells in writing, on August 28, 2012, that he was unable to obtain financing to purchase their home and sought to cancel the contract.  Compl. Ex. D.  Haghighi reiterated this position in subsequent letters dated September 28, 2012 and October 25, 2012.  Compl. Ex. H.  Haghighi has failed to identify any document from the relevant time period in which he expressed an interest in or ability to purchase the Bunnells' home.  Moreover, Haghighi has failed to explain why, if, as he now contends, he is financially able to purchase the Bunnells' home and has always desired to do so, he elected to demand the return of his down payment and termination of the contract rather than to consummate the purchase in a timely manner without obtaining a mortgage.  These circumstances led Judge Block to cancel the notice of pendency and to find, after hearing argument, that common sense compelled the conclusion that Haghighi had no intention of purchasing the Bunnells' home at the time the notice of pendency was filed.  Tr. of proceedings held on Sept. 4, 2013 at 3-10, Cho Rule 11 Affirm. Ex. 20, Docket Entry 54.

The New York Court of Appeals has instructed that, when determining the propriety of a notice of pendency, a court should not only look to the relief sought, but must also "examine the

---

[5] The first rider to the contract of sale provides that, "[i]f without fault on their part, Purchasers are unable to obtain a mortgage commitment as provided for herein by the aforementioned date, either party may elect to cancel this contract by written notice being given, the deposit paid hereunder shall be returned to the Purchasers and thereupon this contract shall cease and terminate without further liability on the part of either party to the other."  Compl. Ex. B, ¶ 6.

[pleading] in its entirety" to determine its true substance.  *5303 Realty*, 64 N.Y.2d at 323.  Here, the essence of the dispute clearly concerned the return of the deposit, not the specific performance of the contract to purchase real estate.  Indeed, the facts alleged in the counterclaim describe Haghighi's application for the mortgage, his subsequent denial, and his demands for the return of his down payment; there is no factual allegation that Haghighi had the means, desire, or intention to acquire the Bunnells' home after his mortgage application was rejected.

Contrary to the strictly enforced provisions of the CPLR, Haghighi filed the lis pendens at issue before filing any pleading at all, and failed to serve the Bunnells with a summons within thirty days.  Moreover, the pleading he later filed did not assert a legitimate claim in good faith that would, if successful, affect title to the Bunnells' home.  Finally, even after he was confronted with the infirmities surrounding his filing of the lis pendens, Haghighi's counsel refused to consent to its withdrawal.  As a result, plaintiffs were compelled to seek an order to show cause supported by a detailed memorandum of law and an affidavit and exhibits, Docket Entries 25 and 26, and to argue the motion orally before Judge Block.  I therefore respectfully recommend that the Bunnells be awarded the costs and legal fees they incurred in securing the removal of the lis pendens.  Bunnells' counsel represents these costs and fees to be $10,427.75, and has provided supporting documentation that shows the hourly rate charged ($275) and hours expended to be reasonable.  Docket Entry 63.[6]

I recommend that this amount be awarded, and I further recommend that it be awarded against Haghighi's attorney, Daniel Alliance, and his law firm, rather than Haghighi.[7]  Only

---

[6] Counsel spent 40 hours removing the lis pendens, for a fee of $11,000.  He also charged $403 for online research expenses and $24.75 for courtesy copies to the Court, then subtracted $1,000 as a courtesy to the Bunnells, bringing the total cost to $10,427.75 ($11,000 + $403 + $24.75 - $1,000).

[7] Haghighi was represented primarily by attorney Daniel Alliance ("Alliance" or "Haghighi's counsel") during all times relevant to the instant motions, and was also occasionally represented by Alliance's brother, attorney Michael Alliance, who signed Haghighi's memorandum in opposition to the Order to Show Cause.  Tr. of proceedings held on Aug. 28, 2013, 2:7-3:11; Docket Entry 27; Def.'s Opp. to Order to Show Cause, Docket Entry 28.

Alliance's signature appears on the lis pendens, suggesting the possibility that it was his independent decision to file the notice on his client's behalf. Even if Haghighi was consulted and wanted the notice filed, it was Alliance, as Haghighi's attorney, who was responsible for ensuring that the filing complied with statutory requirements and had a good faith basis. *Cf. Hulko*, 1990 WL 139022, at \*4 (where attorney filed an improperly served notice of pendency on client's behalf, Court declined to award C.P.L.R. 6514(c) fees against client because he was not the "guilty" party).

II.      *Sanctions Under Rule 11*

The Bunnells also seek sanctions against Haghighi and his counsel pursuant to Federal Rule of Civil Procedure 11 for several misrepresentations made to the Court and instances of misconduct that they claim occurred during the course of this litigation. Rule 11 provides that an attorney presenting pleadings or other papers to the court "certifies that to the best of the person's knowledge, information, and belief," the filing: (1) "is not being presented for any improper purpose"; (2) is "warranted by existing law"; and (3) to the extent the paper includes factual contentions, those contentions have or will likely have evidentiary support. Fed. R. Civ. P. 11(b). Thus, Rule 11 "imposes on attorneys 'an affirmative duty to conduct a reasonable inquiry into the facts and the law.'" *In re AOL, Inc. Repurchase Offer Litig.*, 2013 WL 6331802, at \*3 (S.D.N.Y. Dec. 5, 2013) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)). A party moving to impose Rule 11 sanctions must therefore establish "a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (internal quotation marks and citation omitted). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed.

7

R. Civ. P. 11(c)(1).  In addition, where multiple attorneys are responsible for a Rule 11 violation, the court has discretion to hold them jointly and severally liable.  *In re Australia and New Zealand Banking Group Ltd. Securities Litig.*, 712 F. Supp. 2d 255, 271 (S.D.N.Y. 2010).

    A.  <u>Alliance's Refusal to Withdraw a Demonstrably False Assertion in Haghighi's Pleading in Violation of Rule 11(b)(3)</u>

The Bunnells first contend that Haghighi and Alliance violated Rule 11(b)(3) by falsely representing to the Court that Haghighi entered into the contract for the Alternate Property only after his mortgage application for the Bunnells' home was denied.  Pls.' Suppl. Reply Mem. in Supp. of Rule 11 Sanctions ("Pls.' Suppl. Mem.") at 7-10, Docket Entry 88.

Haghighi asserted in his verified answer and counterclaim that, on August 25, 2012, he was informed of the denial of his mortgage application on the Bunnells' home, prompting him to execute the contract for the Alternate Property later that same day.  Answer ¶ 21(b).  It subsequently came to light, though, that Haghighi actually entered into the contract for the Alternate Property on August 12, 2012: plaintiffs have submitted the contract for the Alternate Property, which is dated August 12, 2012, and a check for ten percent of the contract price—apparently drawn on Haghighi's account and signed by him—that bears the same date.  Cho Summ. J. Affirm. Ex. 3, Docket Entry 44-3.  Plaintiffs have also represented that Haghighi's down payment check was cleared by the bank where it was deposited by August 17, 2012, thus corroborating that it must have been tendered on or about the date it was prepared, and in any event substantially prior to August 25, 2012.  Tr. of proceedings held Oct. 25, 2013 at 6:3-14, Docket Entry 41.  Haghighi's decision to execute a contract to purchase the Alternate Property almost two weeks before his mortgage application on the Bunnells' home was rejected is highly material, because it lends credence to the Bunnells' claim that Haghighi desired to avoid his contractual obligation to purchase the Bunnells' home.

Alliance contends that he alleged the date of the Alternate Property contract in the answer

he filed based upon the facts set forth in the Bunnells' complaint, which also asserted that the

contract was signed on August 25, 2012.  Def.'s Opp. at 5-6; Compl. ¶ 21.  As Alliance further

points out, a search of the Alternate Property on New York City's Automated City Register

Information System likewise listed a contract date of August 25, 2012.  Def.'s Opp. at 6 and Ex.

3.  Finally, Alliance points to a letter from the mortgage broker indicating that the contract for

the Alternate Property was signed on or after August 25, 2012, although the source of the

broker's knowledge of this fact is not clear.  Def.'s Opp. at 6-7 and Ex. 4.  Alliance contends that

he "did not see nor have access to any other information or documents that would lead [him] to

think an otherwise [sic] date."  Def.'s Opp. at 7.  Yet, notably absent from Alliance's account is

any indication that he made efforts to obtain the actual contract for the Alternate Property or his

client's down payment check, either of which would have answered the factual question at issue.

In addition, Alliance fails to explain why Haghighi did not have access to the contract he

executed or the check he prepared, both of which were obtained by plaintiffs only after serving

subpoenas on certain non-parties.  Cho Letter to Alliance dated Oct. 9, 2013, Cho. Summ. J.

Affirm. Ex. 12, Docket Entry 45-6.

Assuming for purposes of argument that Alliance and Haghighi had a good faith basis for

alleging that the contract for the Alternate Property was executed on August 25, 2012 when the

answer was filed, the question that remains is why Haghighi refused to withdraw that allegation

even after plaintiffs produced the contract and check.  In a letter dated October 9, 2013, counsel

for the Bunnells advised Alliance of the actual date of the contract and check, explained why the

inaccurate date alleged by Haghighi was material and misleading, and alerted Alliance that

plaintiffs would seek Rule 11 sanctions based upon the misstatement of fact in Haghighi's

answer.  Cho. Summ. J. Affirm. Ex. 12.  The Bunnells then submitted a letter to the Court

indicating their intention to seek sanctions under Rule 11.  Docket Entry 32.  Alliance responded

by letter on October 17, 2013, but did not acknowledge that the answer he filed inaccurately

reported the date of the contract for the Alternate Property or withdraw the challenged allegation;

Alliance instead merely argued that he had a good faith basis for alleging the August 25, 2012

date when filing Haghighi's answer.  Docket Entry 33.

  During an October 25, 2013 conference, Alliance stated that Haghighi had reviewed the

contract of sale for the Alternate Property and the down payment check, confirmed their validity,

but insisted that "he knows that the mortgage broker verbally told him that . . . he will not get

approved for a super jumbo mortgage and once the broker verbally told him this, whenever that

date is is when he signed the contract for this other property, the alternate premises property."

Tr: 9:22-10:8, Docket Entry 41.  Even though the Court emphasized that the documentary

evidence indicated that Haghighi did not even *apply* for a mortgage to acquire the Bunnells'

home until after he contracted to purchase the Alternate Property, Tr: 10:10-11:11, Docket Entry

41, Alliance failed to address this issue in a subsequent letter to the Court, instead maintaining

that "the date of [the Alternate Property's] contract[] of sale is of no consequence in this matter."

Docket Entry 39.

  Sanctions are appropriately awarded pursuant to Rule 11 for Haghighi's failure to correct

the misstatement in his answer.  Although Alliance arguably had a reasonable basis at the time

the answer was filed to believe that Haghighi entered into a contract to purchase the Alternate

Property on August 25, 2012, he refused to withdraw that allegation even after it was shown to

be inaccurate.  "[A] litigant's obligations with respect to the contents of . . . papers are not

measured solely as of the time they are filed with or submitted to the court, but include

reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendment, Subdivisions (b) and (c).

The Bunnells essentially seek all of the fees and costs they incurred litigating this case as a sanction for Haghighi's failure to withdraw the challenged allegation in his answer. This is clearly not an appropriate measure of the impact that failure had on the case. I respectfully recommend instead that fees be awarded for the time spent by plaintiffs' counsel submitting his letter of October 17, 2013, attaching the contract for the Alternate Property and the associated check for the down payment. Counsel's time records reflect one pertinent entry: 2.1 hours on October 17, 2013 for "Review D. Alliance letter to Court; draft response letter and file it; review court transcript; email report to client." Accordingly, I respectfully recommend that fees be awarded and imposed on Alliance and his law in the amount of $577.50 (2.1 hours x $275/hour).

B. Michael Alliance's Frivolous Opposition to the Order to Show Cause in Violation of Rule 11(b)(2)

The Bunnells next seek Rule 11 sanctions based upon Haghighi's opposition to the Bunnells' emergency motion seeking to cancel the lis pendens. More specifically, the Bunnells assert that Michael Alliance violated Rule 11(b)(2) by submitting frivolous opposition to their motion. Pls.' Suppl. Mem. at 12-15.[8] Rule 11(b)(2) requires that an attorney advance only those claims, defenses, and legal contentions that are warranted by existing law or a non-frivolous argument for extending, modifying, or reversing existing law.

The circumstances surrounding the lis pendens and the reasons why it clearly was not properly filed are discussed at length above. As previously mentioned, Haghighi's opposition to

---

[8] Although, as the Bunnells point out, Michael Alliance did not file separate opposition to the Rule 11 motion, Pls.' Suppl. Mem. at 4, I treat the arguments raised in Alliance's opposition as responsive to any allegations of misconduct levied against Michael Alliance.

cancellation of the lis pendens was submitted by attorney Michael Alliance.  Def.'s Opp. to

Order to Show Cause, Docket Entry 28.  Even now, when opposing the Bunnells' motion for

sanctions, Daniel Alliance appears to be arguing that there was nothing improper about filing the

lis pendens.  Def.'s Opp. at 2-5.  However, as discussed in detail above, there were at least two

glaring defects with the notice of pendency: first, Haghighi did not have a pending claim

affecting title to the Bunnells' home at the time the lis pendens was filed, and second, Alliance

failed to serve a summons on the Bunnells within thirty days of lodging the lis pendens.

Moreover, the counterclaim ultimately brought by Haghighi did not assert in good faith any

cause of action that could affect the title to the affected property.

For all these reasons, the opposition to plaintiff's emergency application submitted by

Michael Alliance warrants the imposition of sanctions.  However, I have already recommended

an award of fees and costs incurred in vacating the lis pendens pursuant to NY.C.P.L.R. 6514(c).

Any further award of fees and costs would therefore be duplicative.  Accordingly, while I

conclude that Fed. R. Civ. P. 11 provides an additional basis for an award of fees and costs

incurred vacating the lis pendens, I do not recommend that any additional fees and costs be

awarded.

I do recommend, however, that because Michael Alliance submitted the frivolous

opposition, he be held jointly and severally liable with Daniel Alliance and Alliance's law firm

for fees and expenses incurred after the opposition was filed.  A review of counsel's time records

reveals three entries occasioned by Michael Alliance's frivolous opposition: 0.5 hours on

September 3, 2013 for "Telephonic conference with Court re: delivery of courtesy copies and

confirmation of oral argument; email to client: re same"; 5.1 hours on September 4, 2013 for

"Prepare for oral argument; argument of motion to vacate; telephone conference with clients, L.

Weiss and E. Firestone re: outcome of motion; filing of order vacating notice of pendency with Queens County Clerk"; and 1.1 hours on September 5, 2013 for "Confirm with Queens County Clerk the cancellation of the notice of pendency; telephone conference with E. Firestone, L. Weiss and clients re: same." Accordingly, I respectfully recommend that Michael Alliance be held jointly and severally liable for the Bunnells' attorney's fees in the amount of $1,842.50 (6.7 hours x $275/hour).

C. Alliance's Failure to Obey a Court Order

The Bunnells also claim that Haghighi and Alliance violated Rule 11(b)(1) by engaging in improper dilatory tactics that increased the costs of litigation. Specifically, they complain of Alliance's alleged obstruction of discovery and willful violation of a court order. Pls.' Suppl. Mem. at 10-12.

In an April 30, 2013 letter to the Court, counsel for the Bunnells catalogued several documents that Haghighi's counsel had allegedly refused to produce or denied access to, including the mortgage application and other documents relating to the Alternate Property. Cho Rule 11 Affirm. Ex. 5, Docket Entry 50-1. During a June 12, 2013 telephone conference, I ordered Haghighi to execute authorizations releasing records relating to his mortgage application. Tr. 2:8-5:12, Docket Entry 58. Because Haghighi's counsel took issue with a sentence in the authorizations explicitly permitting discussion of the mortgage with the Bunnells' counsel, I ruled that this provision should be stricken from the authorization form. Tr. 4:16-5:12, Docket Entry 58; Cho Letter dated June 13, 2013 ("June 13, 2013 Letter") Ex. A, Docket Entry 19. I then directed Haghighi's counsel to prepare revised authorizations containing "the same language as in the other authorization [prepared by plaintiffs' counsel] without the consultation provision." Tr. 9:9-10:10, Docket Entry 58. However, instead of preparing authorizations

13

tracking the language of the form used by plaintiff as directed, Haghighi's counsel prepared authorization forms with the following added language: "You CANNOT discuss anything with anyone." June 13, 2013 Letter Ex. B.  This was a clear violation of the Court's order, which did not provide for any new language to be added to the authorizations.  Moreover, Haghighi offered no basis in law—either at the time he altered the authorizations or since—for the proposition that he had any right to direct his mortgage broker not to speak to plaintiffs' counsel, much less to anyone at all.  Authorizations were subsequently executed in open court, without the additional language inserted by Alliance, on June 14, 2013.  Docket Entry 21.

While significant, because this conduct did not concern "a pleading, written motion, or other paper" presented to the Court, it seems that Rule 11 does not apply.  The Court may impose sanctions *sua sponte*, however, and award fees and costs when a party or its attorney fails to obey a pretrial order.  Fed. R. Civ. P. 16(f)(1)(c) and (f)(2).

Because Alliance failed to comply with the Court's order, the Bunnells were required to submit a June 13, 2013 letter alerting the Court to this fact.  Docket Entry 19.  As a result of that letter, two additional conferences were scheduled: a June 13, 2013 telephone conference and the in-person conference held on June 14, 2013 at which the authorizations were finally executed in proper form.  Finally, to support their motion for sanctions, the Bunnells needed to order the transcripts for these conferences, as well as the June 12, 2013 conference.  Docket Entries 58-60.  Because these additional costs were directly caused by Alliance's unjustified alteration of the authorizations in violation of the Court's directions, he and his law firm should bear them.  *See, e.g.*, *Dee v. Metro. Transp. Auth.*, 2008 WL 5253090, *1-*2 (S.D.N.Y. Dec. 12, 2008) (*sua sponte* imposing sanctions for counsel's failure to obey pretrial discovery orders).

Only one time entry in the billing records submitted by the Bunnells' counsel appears to relate to this issue: 3.7 hours on June 13, 2013 for "Telephone conference with Court re: authorization non-compliance; prepare for court appearance; attend court appearance re: authorization non-compliance by Defendant; prepare authorization forms; obtain signing of authorizations; telephone conference with client." Docket Entry 66, Ex. 2, at 6. This entry resulted in fees of $1,017.50 (3.7 hours x $275/hour). In addition, an invoice submitted by the Bunnells indicates that it cost $181.56 to order the transcripts for these three court conferences. Accordingly, I respectfully recommend that sanctions be imposed on Alliance and his law firm for improperly altering the authorizations at issue in the amount of $1,199.06, representing the resulting fees and costs incurred by the Bunnells.

D.  Fees Incurred Moving Pursuant to Rule 11

A court may award a prevailing party attorney's fees incurred by moving for Rule 11 sanctions. Fed. R. Civ. P. 11(c)(2). Counsel for the Bunnells submitted time records reflecting the hours spent preparing and prosecuting the Rule 11 motion. Docket Entry 66. Many of the entries related to the sanctions motion, however, are plagued by block-billing, or "the grouping of multiple tasks into a single billing entry." *Hines v. City of Albany*, 613 Fed. App'x. 52, 55 (2d Cir. 2015). Block-billing makes it difficult for a court both to ascertain with precision the amount of time spent on each discrete activity and to evaluate the reasonableness of the time expended. *Penberg v. HealthBridge Mgmt.*, 2011 WL 1100103, *9 (E.D.N.Y. Mar. 22, 2011). Although block-billing is not "per se unreasonable," *Hines*, 613 Fed. App'x. at 55, several of the entries here include substantial work unrelated to the sanctions motion. In many instances, unrelated work combined in the same time entry as work on the sanctions motion pertains to the Bunnells' summary judgment motion, which likely required a substantial amount of time. For

15

example, the entry for October 11, 2013 reads, "Drafting, editing and filing of letter to Court re: intention to make SJ motion and motion for sanctions, telephone conference with court reporter." As a second example, the entry for February 4, 2014, records 4.6 hours spent on "Drafting of SJ and Rule 11 motion papers."

Because of the manner in which plaintiffs' counsel prepared his billing records, there is no reliable way to calculate the time he devoted to the pending Rule 11 motion. Moreover, the motion has, in my judgment, been over-litigated; the papers submitted are redundant, and plaintiffs have not prevailed with respect to all of the relief they sought. For these reasons, I conclude that no more than ten hours of time spent by plaintiffs' counsel moving for Rule 11 sanctions should be awarded, and I therefore recommend an award of $2,750 in fees for making the pending motion.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Court grant the Bunnells' motions in part and award the Bunnells costs and attorney's fees. More specifically, I respectfully recommend that fees and costs be awarded against Daniel Alliance and his law firm in the amount of $10,427.75 incurred by plaintiffs as a result of the filing of the lis pendens, and that Michael Alliance be held jointly and severally liable for $1,842.50 of that amount; that fees be awarded against Daniel Alliance and his law firm in the amount of $577.50 incurred by plaintiffs after Alliance refused to withdraw an inaccurate statement of fact in defendant's answer; that fees and costs be awarded against Daniel Alliance and his law firm in the amount of $1,199.06 incurred as a result of Alliance's improper alteration of an authorization; and that fees be awarded against Daniel Alliance and his law firm in the amount of $2,750 incurred in bringing the pending motion.

16

Any objections to the recommendations made in this Report must be filed within fourteen days of this Report and Recommendation and, in any event, on or before March 21, 2016. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

_____/s/_____

STEVEN M. GOLD

United States Magistrate Judge

Brooklyn, New York
March 2, 2016

*U:\MF 2015-2016\Bunnell v. Haghighi\Bunnell v. Haghighi Motion for Sanctions FINAL.docx*